UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DIANA D. SCHMIDT,

|  |  |
|---|---|
| Plaintiff, | COMPLAINT FOR DECLARATORY |
|  | AND INJUNCTIVE |
| - against - | RELIEF AND FOR |
|  | DAMAGES AND |
| NEW YORK STATE DEPARTMENT OF LABOR; | DEMAND FOR |
| LINDA ANGELLO, individually and in her capacity | JURY TRIAL |
| as Commissioner of the New York State Department |  |
| of Labor; LORI MATTOON, individually and in her | Civil Case No.06 CV 5461 |
| capacity as Supervisor, Claims Service Subdivision, |  |
| New York State Department of Labor; and | Hon. |
| JOHN DOES 1-10, individually and in their respective |  |
| Capacities as employees of the Claims Service |  |
| Subsection, Unemployment Insurance Division, |  |
| New York State Department of Labor |  |

Defendants
-------------------------------------------------------------------X


Plaintiff, by its undersigned counsel, alleges upon knowledge as to itself and its own actions and upon information and belief as to all other matters alleged below as follows.


PRELIMINARY STATEMENT


1.      This is a civil rights action against Defendants, pursuant to 42 U.S.C. § 1983, seeking damages and compensation, including attorneys' fees and expenses, for the deprivation of various constitutional rights, both Federal and State, of Plaintiff, arising out of a series of actions, policies and/or practices carried out by the Defendants, all while acting under the color of New York State Law, and seeking to permanently enjoin Defendants from engaging in such

1

actions, policies and/or practices that discriminate against Plaintiff and which deny Plaintiff of her rights, privileges and immunities as guaranteed by the United States Constitution.

2.     Plaintiff is also challenging the constitutionality of certain provisions of the Unemployment Insurance Law of the State of New York (Article 18, §§ 500-643 of the New York State Labor Law) (herein the "Labor Law"), a broad regulatory scheme of statutes that impose severe penalties, both civil and criminal, for "willfully making false statements" to obtain unemployment compensation benefits in the State of New York, on the grounds that such provisions are unconstitutional, both on their face and as applied to Plaintiff.

3.     Specifically, Plaintiff is seeking declaratory and injunctive relief against the New York State Department of Labor ("NYSDOL") and various of its employees, known and unknown, including employees of the Claims Service Subsection of the Unemployment Insurance Division of the New York State Department of Labor, including (a) a permanent injunction enjoining the collection from Plaintiff of certain unemployment compensation benefits previously authorized by the NYSDOL and paid to Plaintiff; (b) a declaration that §§ 594 of Title 7 of the Labor Law and 597 (4) of Title 7 of the Labor Law are unconstitutional, both on their face and as applied to Plaintiff, together with a permanent injunction against their use; and (c) a declaration that a determination made by the NYSDOL, to the effect that Plaintiff "willfully made false statements to obtain benefits," is unlawful and invalid and must be fully and permanently expunged from the records of the NYSDOL, on the grounds that such determination was wholly unsupported by the evidence; was made in reliance on statutes, procedures and policies that are constitutionally defective; and constitutes the precise type of "stigma plus"

violation that the Supreme Court of the United States has determined to be both unlawful and actionable.

4.      Plaintiff is a citizen of the United States and, at all times relevant, a resident of the City, County and State of New York.

5.      Defendant NYSDOL is, upon information and belief, an agency of New York State government created pursuant to New York State Law and with its powers and duties set forth in the New York State Constitution, statutes, rules and regulations.

6.      The main office of NYSDOL is, upon information and belief, located in the City and County of Albany, State of New York, at W. Averell Harriman State Office Campus, Building 12, Albany, New York 12240.

7.      Defendant, Linda Angello ("Angello"), is, upon information and belief, a resident of the State of New York; and, at all times relevant, Defendant Angello was the Commissioner of NYSDOL.

8.      Defendant Angello is sued individually and in her official capacity for the NYSDOL.

9.      Upon information and belief, defendant, Lori Mattoon ("Mattoon"), was employed by the NYSDOL as the supervisor of the Claims Service Division of the NYSDOL.

10.     Defendant Mattoon is sued individually and in her official capacity for the NYSDOL.

11.     John Does 1-10 are, upon information and belief, residents of the State of New York and employees of the NYSDOL who are believed to be employed by the Claims Service Subsection of the Unemployment Insurance Division of the NYSDOL and who therefore may become involved in the future collection efforts of the NYSDOL against Plaintiff.

12.     John Does 1-10 are being sued individually and in their official capacities for the NYSDOL.

JURISDICTION AND VENUE

13.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1343(3) and (4) for claims brought under 42 U.S.C. § 1983 to enforce rights guaranteed by the United States Constitution. The Court's pendent and supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367. Jurisdiction is also proper pursuant to 28 U.S.C. § 1331 for claims arising under the United States Constitution.  This action also seeks declaratory judgment relief pursuant to 28 U.S.C. § 2201 et seq.  The Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988. Venue is proper in this district court under 28 U.S.C. §§ 1391(b)(1) and (2) and 1392(e).

PROCEDURAL HISTORY

14.     Commencing on or about October 17, 2001 and continuing to on or about January 22, 2002 (the "Unemployment Period"), Plaintiff applied for and received Unemployment Compensation benefits in the amount of $5,265.00 (the "Unemployment Benefits") from the Unemployment Insurance Division of the NYSDOL.  Thereafter, some six months after, Plaintiff voluntarily terminated the receipt of further Unemployment Benefits because she had found new employment, a Special Agent of the NYSDOL sent Plaintiff an Initial Notice of Determination, dated July 30, 2002 (the "Initial Notice of Determination").

15.     The Initial Notice of Determination advised Plaintiff, inter alia, that the NYSDOL had made a determination that Plaintiff was "not totally unemployed" at the time she collected the Unemployment benefits at issue, based on a series of factors that are not relevant to this lawsuit; and that Plaintiff was therefore ineligible to receive the Unemployment Benefits that she had received.  The same Initial Notice of Determination set forth, as a critical element of the basis for its findings, a separate "Notice of Determination of Willful Misrepresentation," which stated that the NYSDOL had found that Plaintiff had willfully made certain false statements [none of which were in the Initial Notice of Determination] in order to obtain unemployment compensation benefits, and that Plaintiff was therefore required by statute to repay and refund to the NYSDOL the sum of $5,265 in Unemployment Benefits that she had received.

5

16.     Plaintiff timely challenged the factual basis for, and the underlying legal premises of, the issuance of the Initial Notice of Determination by demanding a hearing before an Administrative Law Judge.  On September 30, 2002, a Hearing (the "Hearing") was held at the offices of the Administrative Law Judge Section of the Unemployment Insurance Appeal Board, before Joseph Wolfermann, an Administrative Law Judge (the "ALJ"), at which time Plaintiff and representatives of the NYSDOL presented evidence and gave testimony relevant to the Initial Notice of Determination, all of which was recorded and transcribed into a complete Transcript of the Hearing, dated as of September 30, 2003 (the "Hearing Transcript").

17.     Immediately following the submission of evidence and testimony at the Hearing, the ALJ rendered his decision, dated as of September 30, 2002 (the "ALJ Decision"), sustaining and affirming the findings and determinations contained in the Initial Notice of Determination and concluding, based on the "credible evidence" presented at the Hearing, that the Plaintiff "made false statements which render the [Unemployment Benefits] recoverable."

18.     Plaintiff timely appealed the ALJ Decision to the Unemployment Insurance Appeal Board (the "Appeal Board") and, on November 29, 2002, the Appeal Board rendered its decision (the "Appeal Board Decision"), in which it affirmed the ALJ Decision, specifically stating:

"We have reviewed the entire record and have considered the testimony and other evidence.  It appears that no errors of law have been made.  The findings of fact and the opinion of the Administrative Law Judge are fully supported by the record and, therefore, are adopted as the findings of fact and the opinion of the Board."

19.     Plaintiff then timely filed a Notice of Appeal with the New York State Supreme Court, Appellate Division Third Department (the "Appellate Division"); and appealed from the Appeal Board Decision, arguing, inter alia, that the finding that Plaintiff had willfully made false statements to obtain benefits was wholly unsupported by the facts, was constitutionally defective, and was void as a matter of law.

20.     On May 13, 2004, the Appellate Division issued a Memorandum and Order (the "Appellate Division May 13 Order"), generally affirming all the findings and determinations contained in the ALJ Decision and the Appeal Board Decision and concluding, in part, that "[substantial evidence supports the [Appeal] Board's assessment of a recoverable overpayment of benefits."

21.     On June 14, 2004, Plaintiff timely filed with the Appellate Division a Motion for Re-argument or, in the alternative, for Permission to Appeal to the Court of Appeals; and, on August 11, 2004, the Appellate Division Third Department issued an Order (the "Appellate Division August 11 Order"), denying Plaintiff's Motion for Re-argument or, in the alternative, for permission to appeal to the Court of Appeals.

22.     On September 10, 2004, Plaintiff timely filed a Motion for Leave to Appeal to the Court of Appeals of the State of New York pursuant to Section 5602 of the New York Civil Practice Law and Rules ("Plaintiff's Motion for Leave to Appeal"); and on November 23, 2004, the Court of Appeals of the State of New York issued an order (the "Court of Appeals Order"),

denying, without any explanation, Plaintiff's Motion for Leave to Appeal. (The proceedings relating to the issuance of the Initial Notice of Determination, the ALJ Decision, the Appeal Board Decision, the Appellate Division May 13 Order, the Appellate Division August 11 Order, and the Court of Appeals Order are sometimes herein collectively referred to as the "Underlying State-Court Proceedings.")

23.     On November 25, 2005, Lori Mattoon, the Supervisor of the Claims Service of the NYSDOL sent Plaintiff a two-page "Notice of Pending Referral of Past Due Debt to the New York State Department of Taxation and Finance" (the "November 25 Demand Letter"), demanding that Plaintiff make payment in full of the sum of $5,265 to the NYSDOL.

## FACTUAL ALLEGATIONS

24.     As noted above, commencing on or about October 17, 2001 and continuing to on or about January 22, 2002 (the "Unemployment Period"), Diana Schmidt, the Plaintiff herein ("Plaintiff"), applied for and received Unemployment Compensation benefits in the approximate amount of $5,265.00 (the "Unemployment Benefits") from the Unemployment Insurance Division of the NYSDOL.  Thereafter, some six months after Plaintiff voluntarily terminated the receipt of further Unemployment Benefits because she had found new employment, a Special Agent of the NYSDOL (the "Special Agent") sent the Plaintiff the Initial Notice of Determination advising her that she was required to refund to the NYSDOL the entire $5,265 that she had received in Unemployment Benefits.

25.     As expressly set forth in the Initial Notice of Determination, the Special Agent set forth three separate and distinct "determinations" as the basis of her ruling that Plaintiff was required to refund to the NYSDOL the entire $5,265 that she had received in Unemployment Benefits, to wit:

(a) Plaintiff was "ineligible for unemployment benefits" during the Unemployment Period;

(c) Plaintiff had "concealed the pertinent fact that [she] was an officer of a corporation" during the Unemployment Period; and

(b) Plaintiff had "willfully made false statements to obtain benefits" (hereinafter referred to as the "Willful False Statements Determination").

26.     For the purposes of this lawsuit, Plaintiff addresses only the last of those three determinations, namely the Willful False Statements Determination.  As plainly stated in the Initial Notice of Determination, the Willful False Statements Determination was based on a finding by the Special Agent that, on 14 separate dates, between 10/17/01 and 01/22/02 (to wit: 10/17/01; 10/23/01; 10/29/01; 11/06/01; 11/13/01; 11/19/01; 11/26/01; 12/04/01; 12/11/01; 12/19/01; 01/02/02; 01/07/02; 01/16/02; and 01/22/02), Plaintiff had "willfully made false statements to obtain benefits."   The only allegation in support of that accusation was that Plaintiff had - at least in the eyes of the Special Agent - "certified that [she] did not work in employment or self employment when in fact [she] knew [she was] an officer of a corporation." However, the Initial Notice of Determination did not specify the manner by which Plaintiff had

"certified" such statements; and, as will be seen, that allegation was never supported by any evidence or by any testimony of any nature whatsoever. It was - and it remained - an unsupported accusation; but, as will be seen, it was also critical to the NYSDOL's legal authority to seek to recover back the Unemployment Benefits.

27.     In fact, at the Hearing, NYSDOL itself acknowledged (through the testimony of two representatives, namely, the Special Agent and an attorney from the Department of Labor, identified as A. Thiemann, Esq.) that the nature and scope of its evidence against Plaintiff proving that she had "certified" certain false statements was - at best - limited.  In applying for Unemployment Compensation benefits, Plaintiff had not signed any forms or certified in writing any of the information upon which the Willful False Statements Determination was based.  In fact, under the procedures then in effect[1] at the NYSDOL, anyone who applied for Unemployment Compensation benefits could do so only by means of utilizing a touch-tone telephone service known as TEL-SERVICE, during which the applicant was asked a series of prerecorded questions, which the applicant then answered by means of pressing certain numbers on the telephone.

28.     Because the NYSDOL had - by its own admission - no direct evidence that Plaintiff had falsely certified anything when she applied for the Unemployment Compensation benefits at issue in this case, the validity of its Willful False Statements Determination depended on reconstructing (a) the series of pre-recorded questions that were allegedly asked of Plaintiff on the 14 dates in question and (b) the factual statements and admissions that were allegedly

10

made by the Plaintiff on each of those 14 occasions.  As noted above, the Initial Notice of Determination contained no information about how Plaintiff allegedly "certified" the false information that led to the improper payment of the Unemployment Benefits to her.  Only at the Hearing did the NYSDOL even attempt to address the need to present concrete evidence in support of the Willful False Statements Determination. And at the Hearing, the NYSDOL's attempt to reconstruct that evidence that was crucial to its case was nothing short of a farce:

       a)      First, Mr. Thiemann admitted that there was <u>no recording</u> available that contained any of the actual questions asked of the Plaintiff on those 14 dates or any of the actual answers given by the Plaintiff on those 14 occasions.  Mr. Thiemann further acknowledged that there was <u>not even a computer printout</u> of the actual questions asked or of the answers given.  In fact, when Specifically asked if he had such a computer printout, Mr. Thiemann responded, "Well, we don't need one" - because he knew "the scheme of the questions."

[1]    It is Plaintiff's understanding that applicants for unemployment compensation benefits currently have an additional method of applying for such benefits - namely by using an online service known as WEB-SERVICE, which is now available at the NYSDOL's Website at https://ui.labor.state.ny.us/UBC/home.do?FF_LOCALE=1.  However, since Plaintiff is presently barred from seeking additional unemployment compensation benefits as a result of the actions of the NYSDOL in the Underlying State Court Proceedings, she is unable to log on to that Website to determine whether WEB-SERVICE asks questions similar to those asked on the TEL-SERVICE that plaintiff used when she applied for the unemployment compensation benefits at issue in this case.

       b)      Then, Mr. Thiemann admitted that all of the answers given by a person in response to the series of pre-recorded questions, allegedly asked during each TEL-SERVICE

session are recorded by a machine, but that <u>no permanent record of the recorded answers is kept</u> the NYSDOL.

c)      Next, Mr. Thiemann admitted that, in the absence of any recording or any computer printout of the actual questions asked and the actual answers given by the Plaintiff, he would "<u>have to make an assumption</u>" as to the likely nature of the questions and answers that led to the conclusion and supported the determination that Plaintiff had "willfully made false statements to obtain benefits."

d)      Finally, in light of those astonishing and damning admissions, the ALJ ultimately asked Mr. Thiemann point blank whether he had any testimony "about whether a false statement was made in the certification" - and Mr. Thiemann responded "I have no testimony at this point, Judge."  The "no testimony at this point" admission ultimately became "no evidence at all" since the NYSDOL never again even <u>attempted</u> to proffer or produce <u>any evidence</u> or <u>any testimony</u> that Plaintiff had ever "willfully made false statements to obtain benefits."  Not only did the NYSDOL fail to proffer or produce any such evidence at any time during the Hearing, it repeatedly refused to respond to Plaintiff's assertions throughout the balance of the Underlying State-Court Proceedings that no such evidence existed; and it repeatedly refused to explain how it had arrived at the conclusion that Plaintiff had "willfully made false statements to obtain benefits."

e)      Despite the highly attenuated nature of the NYSDOL's claims against Plaintiff and the total absence of any concrete evidence on the critical issue of whether the NYSDOL had

12

presented sufficient evidence to support its claim of willful false statements, the ALJ concluded that there was "credible evidence" that Plaintiff had willfully made false statements to obtain benefits and that she was, therefore, required to repay the Unemployment Benefits to the NYSDOL as required by the provisions of Sections 594 and 597 (4) of the Labor Law. Subsequently, the ALJ's Decision was summarily affirmed first by the Appeals Board, then by the Appellate Division, and finally by the New York State Court of Appeals.

f)      Based on all of the foregoing, the transparency of the determination that Plaintiff "willfully made false statements to obtain benefits", is not only appalling, it is chilling.  The Willful False Statements Determination was made - and then repeatedly upheld - without requiring the NYSDOL to prove the essential element of that charge.  In a classic bootstrap, the accusation became the proof itself.  Equally significant, the ALJ, the Appeals Board and two courts in New York thereafter concluded that the NYSDOL is authorized to make a finding that a person has "willfully made false statements to obtain benefits" for purposes of Sections 594 and 597 (4) using a "credible evidence" standard.  Even assuming arguendo the NYSDOL somehow shown that Plaintiff "willfully made false statements to obtain benefits" by a credible evidence standard of proof (an assumption that Plaintiff disputes), that standard is constitutionally insufficient based on the consequences of an adverse finding under Sections 594 and 597 (4); and that "credible evidence" standard renders both statutory provisions infirm and defective - both on their face and as applied to Plaintiff, all as more particularly set forth in Paragraphs 41 *et seq.*, below.

13

29.     Acting under the presumed authority of Sections 594 and 597 (4), the NYSDOL sent Plaintiff the November 25 Demand Letter, demanding immediate payment of the $5,265 in Unemployment Benefits to the NYSDOL.  In response to that demand, Plaintiff began making payment of the $5,265 claimed to be owed by sending, under protest, the NYSDOL monthly checks in the amount of $146.25; and, as of the date of this Complaint, she has paid the NYSDOL a total of $1023.75, all under protest.

30.     As a direct and unavoidable consequence of the determination that Plaintiff "willfully made false statements to obtain benefits," Plaintiff has also suffered from numerous other disabilities which have had, and continue to have, serious and detrimental impact on various aspects of her life far beyond the efforts by the NYSDOL to collect back $5,265 in previously paid Unemployment Benefits.

31.     First, the finding by the NYSDOL that Plaintiff "willfully made false statements to obtain benefits" constitutes the precise type of "stigma plus" violation that the Supreme Court has determined is both improper and actionable.  In *Paul v. Davis, 424 U.S. 693 (1976)*, the Supreme Court explained that the Due Process Clause makes actionable many wrongs inflicted by government employees which had theretofore been considered immune from liability.  In that case, the Court specifically included the infliction by state officials of a "stigma" to one's reputation as the type of improper governmental action to which it was referring.  It described such wrongs as a "stigma plus" violation; and it explained that "stigma plus" refers to a claim brought for an injury to one's reputation (the stigma) coupled with the deprivation of some

14

"tangible interest" or property right (the plus), without adequate process.  (*Paul, id., at 701-02 and 711-12*).

32.     In the instant case, the finding by the NYSDOL that Plaintiff "willfully made false statements to obtain benefits" constitutes precisely the type of "stigma plus" violation that the Supreme Court condemned in *Paul*.  The open and notorious finding that Plaintiff had willfully committed fraud to obtain benefits is a matter of public record; and, as an indelible "badge of infamy" on her reputation and career, it constitutes a permanent stigma that warns the world that Plaintiff has been convicted of a crime and that subjects her to public scorn and disapprobation.  Both because (a) the NYSDOL offered absolutely no evidence or testimony to support its accusation against Plaintiff (as more fully described in Paragraph 28 above), and (b) the statutes that permitted and authorized the NYSDOL to make the Willful False Statement Determination did not afford the Plaintiff the due process rights to which she was entitled (namely, a determination of that criminal charge by proof beyond a reasonable doubt, all as more particularly set forth in Paragraphs 41 *et seq.*, below), the Willful False Statements Determination plainly and absolutely enabled the NYSDOL to inflict a stigma on Plaintiff "without adequate process" and in derogation of her rights guaranteed by the Constitution.

33.     As such, the Willful False Statements Determination has directly resulted in the deprivation of the precise types of property rights and "intangible interests" that the Supreme Court described, condemned and held were actionable in *Paul*.  The property rights at stake consist of and constitute the NYSDOL's claim for reimbursement of $5,265 in Unemployment Compensation Benefits that Plaintiff received.  Among the many "intangible interests" that are at

stake and that are directly implicated by the finding of "willful false statements to obtain benefits" are Plaintiff's rights to run for future public office, to serve on the Boards of Directors of public and private companies, and to apply for certain types of jobs in the banking, financial services and teaching industries.   Plaintiff's ability to pursue those careers and those opportunities are now absolutely precluded as a practical matter by virtue of the now public record that Plaintiff has been adjudged by an official governmental agency of the State of New York to have engaged in criminal conduct.   In short, that finding constitutes an absolute bar to employment in many fields and professions that bar employment by persons with criminal convictions.   The NYSDOL's finding in this case also directly impacts the Plaintiff's ability to obtain certain types of surety bonds and other similar types of insurance that are required in many types and fields of employment, including her chosen career as a producer in the television and movie business.

34.     All of those restraints and limitations are precisely the types of serious consequences that the Supreme Court has acknowledged will flow "logically" and "naturally" from the imposition of a "stigma plus" on a citizen by the State.  As Justice Brennan wrote in *Paul*:

> "This is clear recognition that an official 'badge of infamy' affects tangible interests of the defamed individual and not merely an abstract interest in how people view him; for the 'badge of infamy' has serious consequences in its impact on no less than the opportunities open to him to enjoy life, liberty, and the pursuit of happiness. . . . Our precedents clearly mandate that a person's interest in his good name and reputation is cognizable as a 'liberty' interest within the meaning of the Due Process Clause . . . " (*Paul, id., at 734*).

16

35.     In sum, the finding that Plaintiff "willfully made false statements to obtain benefits" has and will continue to have enormous negative impacts on her life, liberty and pursuit of happiness far beyond the consequences of the mere recoupment of the $5,265 in Unemployment Benefits which the NYSDOL is seeking to recover based on the Willful False Statements Determination.   Plaintiff will also be subjected to the "serious consequences" described by Justice Brennan - even though the NYSDOL's finding on that issue was a mockery of justice.  Not only was the NYSDOL unable to proffer or produce a single piece of evidence to support its claim that Plaintiff had "willfully made false statements to obtain benefits," the transparency of its finding is chilling: when faced with proving the essential element of two statutes with clear and unavoidable criminal consequences, it substituted an accusation for proof beyond a reasonable doubt.

36.     Another heinous collateral consequence that flows from the finding that Plaintiff "willfully made false statements to obtain benefits" is that, by virtue of that finding, Plaintiff is automatically barred from re-litigating the findings of fact that led to that determination.  Thus, should Plaintiff be subjected to subsequent criminal charges or civil proceedings arising out of or based upon the findings made by the NYSDOL, she would be barred, under provisions of New York State law, and she would be precluded, under principles of collateral estoppels, from disputing the factual findings and premises underlying the Willful False Statements Determination.

37.     Under the provisions of Section 103 of Article 3 of the New York State Labor Law, "no court shall have jurisdiction to review or annul any . . . order [of the Department of Labor] or to restrain of interfere with its enforcement."   Thus, once the New York State Department of Labor (of which the Unemployment Insurance Department is a part) has made a final and binding determination that affects the property, rights and reputation of Plaintiff, Plaintiff is legally precluded, under the provisions of § 103 of the Labor Law, from seeking to restrain or interfere with the enforcement of that finding - or even to review or seek annulment of that finding.

38.     In addition to that statutory bar, Plaintiff would also be precluded from re-litigating the issues that gave rise to Willful False Statement Claim in any subsequent proceeding involving the same issues, based on the doctrine of collateral estoppel.  (See, *S.E.C. v. Monarch Funding Corp., 192 F.3d 295 (2nd Cir. 1999)*).   As the Second Circuit Court of Appeals explained in that case, the doctrine of collateral estoppels bars a party from re-litigating the findings made during one proceeding in order to "preserve [ ]  the integrity of the judicial process by eliminating inconsistent results."  (*Monarch Funding, id., at 306*).

39.     Thus, even though the NYSDOL admitted that it had no evidence to proffer in support of its accusation, the finding by the ALJ and the Appeal Board that Plaintiff "willfully made false statements to obtain benefits" becomes a legally binding, preclusive and unappealable factual premise in any subsequent civil or criminal proceedings by the State of New York against Plaintiff under any of the statutes set forth above - all in derogation of Plaintiff's rights.

40.    In sum, Plaintiff respectfully submits that her finding of guilt under Sections 594 and 597 (4) of the Labor Law is invalid, and must be expunged from the record.  Accordingly, Plaintiff brings this civil action for deprivation of rights, pursuant to 42 U.S.C. § 1983, against the Defendants herein who, while acting under the color of the law, either knowingly or unwittingly have deprived Plaintiff of various rights, privileges and immunities secured by the Constitution and laws of the United States; and for redress, at law or in equity, of the continued and continuing violations of her constitutional rights and the irreparable harm and damage caused to her good name and reputation, all as more particularly set forth below.

## THE STATUTORY LANGUAGE AT ISSUE

41.    The law simply does not allow the NYSDOL to appropriate and take back unemployment compensation benefits previously paid to a claimant willy-nilly.  In fact, the New York State Legislature has mandated that the sole statutory basis upon which, and the exclusive means by which, the NYSDOL may seek to reclaim benefits previously paid to a claimant is pursuant to the provisions of Sections 594 and 597 (4).  As the ALJ explained in the ALJ Decision:

> "Pursuant to Labor Law § 597 (4), . . . a new determination or decision shall not affect the rights to any benefits already paid under the authority of the prior determination or decision provided they were accepted by the claimant in good faith and the claimant did not make any false statement or representation and did not willfully conceal any pertinent fact in connection with the claim for benefits.

Pursuant to Labor Law § 594, a claimant who has willfully made a false statement
or representation to obtain any benefits shall forfeit [such] benefits."

42.     Sections 594 and 597 (4) are the principal penalty provisions of a broad
regulatory scheme of statutes that govern the payment of unemployment compensation benefits
to claimants in the State of New York.  Those two statutes enable the NYSDOL to recoup
unemployment compensation that were obtained fraudulently.  However, the New York State
Legislature has made clear that the NYSDOL <u>can not</u>, and <u>may not</u>, seek to collect back
unemployment compensation benefits that it has previously paid <u>unless and until</u> it finds, under
the provisions of Sections 594 and 597 (4) that a claimant has "willfully made false statements"
to obtain unemployment benefits.  In short, a finding that a claimant has willfully made false
statements to obtain benefits is the *sine qua non* of any recovery of funds under Sections 594 and
597 (4).


43.     While the goals of both of those provisions are laudatory, they suffer from a
severe constitutional impediment that renders them constitutionally defective, both on their face
and as applied to Plaintiff.  The constitutionally defective flaw in both provisions is that they
absolutely and automatically permit the imposition of criminal consequences on a person without
affording that person rights that are guaranteed to her under the Due Process Clause of the
United States Constitution.  As will be seen, a person who is "charged with an act which would
constitute a crime," is entitled to have her guilt established by proof beyond a reasonable doubt.
Yet, under Sections 594 and 597 (4), the NYSDOL is <u>not</u> required to find and determine that a

claimant "willfully made false statements to obtain benefits" by proof beyond a reasonable doubt.

In fact, the only reference in the Labor Law pertaining to the burden of proof that applies to hearings under Sections 594 and 597 (4) of the Labor Law appears in § 622(2) of Title 7, and that provision states, in part, that: "The appeal board and the referees, in hearings and appeals under any provision of this article shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure but may conduct the hearings and appeals in such manner as to ascertain the substantial rights of the parties."

44.     In short, a finding under Sections 594 and 597 (4) that a person has "wilfully made false statements to obtain benefits" does not require proof beyond a reasonable doubt. Under Labor Law § 622(2) it does not even require rudimentary adherence to "the common law" or to "the statutory rules of evidence" or to "technical or formal rules of procedure." Those failures constitute a serious violation of the rights guaranteed under the Due Process Clause of the Fourteenth Amendment; and they render Sections 594 and 597 (d) unconstitutionally void and unenforceable both on their face and as applied to Plaintiff.

45.     Sections 594 and 597 (4) impose severe penalties, both civil and criminal, for "willfully making false statements" to obtain unemployment compensation benefits in the State of New York.  In addition to whatever civil and fiscal penalties that may be imposed under Sections 594 and 597 (4), those statutes are also criminal statutes - in nature and effect - because, whether intended or not, a finding that a claimant has "willfully made false statements" to obtain

unemployment benefits <u>automatically</u> and <u>simultaneously</u> triggers a wide range of criminal penalties.

46.     Thus, a related provision of the Labor Law, namely § 632 of Title 9 states in part:

"Section 632. False statements or representations. 1. Benefits and contributions. Any person <u>shall be guilty of a misdemeanor</u> who willfully makes a false statement or representation . . . with the effect of obtaining, either for himself or for any other person, any benefit or payment under the provision of this article or of any similar law of another state or the United States . . ."

47.     In short, under the plain language of § 632 of the Labor Law, once the NYSDOL makes the administrative finding that a person has willfully made false statements for the purpose of obtaining unemployment compensation benefits, that person is also automatically and without any further action by the State deemed to be guilty of a misdemeanor.

48.     In addition, a finding that a person has willfully made false statements in order to obtain unemployment compensations automatically implicates numerous other collateral consequences, both civil and criminal in nature:

a)      For example, a finding that a person made a willful false statement to obtain benefits also constitutes a *per se* adjudication of guilt under the provisions of Article 158 of Chapter 40 of the Consolidated Laws of New York (the "Penal Law"), where Section 158.15 provides that "a person <u>is guilty of welfare fraud in</u>

<u>the third degree [a class C felony]</u> when he or she commits a fraudulent welfare

act and thereby takes of obtains public assistance benefits [where] the value of the

public assistance benefits exceeds $3,000." (*Emphasis added*).

b)      In addition, a finding that a person made a willful false statement to obtain

benefits also constitutes a per se adjudication of guilt under numerous other

criminal statutes, both State and Federal, including 18 U.S.C. § 1001 (Fraud and

False Statements), 18 U.S.C. § 666 (Theft or Bribery Concerning Programs

Receiving Federal Funds), and 18 U.S.C. § 641 (Public Money, Property or

Records).

49.    Under the plain language of each of those criminal statutes, the Plaintiff is

automatically deemed to be guilty of the elements of those crimes simply by virtue of the finding

of the ALJ and the Appeal Board that Plaintiff "willfully made false statements to obtain

benefits."  In other words, the mere finding that Plaintiff "willfully made false statements to

obtain benefits" fully satisfies the essential elements of, and is tantamount to a finding of guilt

under, each of those criminal statutes.  And yet, in making that finding, the Plaintiff was given

none of the numerous protections and due process rights that are required to accorded to citizens

before such a finding of criminal guilt can be established.

50.    For example, at a very minimum, the charge that Plaintiff "willfully made false

statements to obtain benefits" constitutes <u>a per se accusation of a crime</u> under the various statutes

listed above - and, as such, that accusation violates Plaintiff's rights under Section 12 of Article 2

of the Bill of Rights of the New York Civil Rights Law (Chapter 6 of the New York Consolidated Laws), which states:

> "Sec. 12.  <u>Rights of persons accused of crime</u>.  In all criminal prosecutions, the accused has a right to a speedy and public trial, by an impartial jury, and is entitled to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; and to have compulsory process for obtaining witnesses in his favor.  An alien is not entitled to a jury, composed in part of aliens or strangers, in an action or special proceeding civil or criminal."

51.    The critical element of that constitutional provision is that it is labeled and it relates to persons who are "accused" of a crime.  Since, as noted above, the mere finding that Plaintiff "willfully made false statements to obtain benefits" satisfies the essential elements of, and is tantamount to a finding of guilt under, numerous criminal statutes, the assertion of that charge is clearly an accusation of a crime - and as such that accusation triggers the various rights and privileges specified in Section 12 of the Bill of Rights of the New York Civil Rights Law quoted above.    And yet, Plaintiff has been accorded none of those protections that the Constitution of the State of New York says must be afforded to persons accused of crimes - including the right to a public trial; the right to an impartial jury; the right to be informed of the nature and cause of the accusations against her; the right to be confronted with the witnesses against her; and the right to have compulsory process for obtaining witnesses in her favor.

52.    Equally clear and equally significant, the finding that Plaintiff made "willful false statements to obtain benefits" is void as a matter of law because it was both contrary to, and represented an unreasonable application of, clearly established principles of constitutional law,

as determined by the Supreme Court of the United States.  A basic and immutable element of the constitutional rights of all citizens of the United States of America is that, in any criminal and quasi-criminal proceedings, an accused citizen has the right to have the evidence against him or her determined by proof beyond a reasonable doubt - a standard that clearly was neither met nor applied in any of the Underlying State-Court Proceedings.

53.     Here, the ALJ announced that the standard of proof he had used and applied to sustain the finding that Plaintiff "willfully made false statements to obtain benefits" was a mere "credible evidence" standard.  However, as will be seen, the standard of proof that was applied in this case failed even to meet a "credible evidence" standard.

54.     As is more fully detailed in Paragraph 28(d) above, the NYSDOL failed to proffer or produce <u>any</u> evidence to support its contention that Plaintiff had "willfully made false statements to obtain benefits.  On that basis alone, the charges against her "were so totally devoid of evidentiary support as to render [her] conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment."  *Thompson v. Louisville, 362 U.S. 199 (1960).*   In this case, the wish became the father of the thought: the NYSDOL wanted to recoup the Unemployment Benefits funds so badly that it simply decided its accusation alone was sufficient to satisfy the statutory provisions of Sections 594 and 597 (4) of the Labor Law.  Because Sections 594 and 597 (4) of the Labor Law permitted, if not encouraged, the finding that Plaintiff "willfully made false statements to obtain benefits," without the necessity of proving even a modicum of evidence to support that accusation, and because the NYSDOL neither presented nor proffered <u>any</u> proof beyond rank assumptions and naked speculation to support that critical

claim, Sections 594 and 597 (4) are constitutionally invalid <u>as applied</u> to Plaintiff under the due process standards enunciated by the Supreme Court in *Thompson*.

55.    Finally, Plaintiff respectfully submits that even if this court finds - as the ALJ and the Appeal Board apparently did - that the record supports an inference that there was some "credible evidence" that was presented at the Hearing, a "credible evidence standard" is constitutionally insufficient to sustain and support the imposition of the criminal or quasi-criminal sanctions and penalties that have been imposed on Plaintiff - without affording her <u>any</u> of the protections guaranteed to criminal defendants by the Constitutions of the United States and of the State of New York; and for that reason alone Sections 594 and 597(4) are constitutionally defective <u>as applied</u> to her.

56.    In addition to the constitutional invalidity of Sections 594 and 597 (4) as applied to the facts of this case, Plaintiff respectfully submits that both such provisions are constitutionally invalid <u>on their face</u>.  More than 35 years ago, the United States Supreme Court firmly established, in *In Re Winship, 397 U.S. 358 (1970)*, that "proof beyond a reasonable doubt is among the 'essentials of due process and fair treatment' required during the ad judicatory stage when a [person] is charged with an act which would constitute a crime . . . " In that same case, the Supreme Court also held that a criminal defendant has the right to have a jury determine all the essential elements of a crime beyond a reasonable doubt, because otherwise "a person accused of a crime . . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty . . . on the strength of the same evidence as would suffice in a civil case." (*Winship, id., at 363*).

57.     Under the principles established in *Winship*, Plaintiff was constitutionally entitled to - but was not accorded the right to - have the validity of the "willful false statement" accusation against her determined by proof beyond a reasonable doubt because that finding automatically and absolutely subjected her to criminal penalties.  But Sections 594 and 597 (4) don't require proof beyond a reasonable doubt; in fact, as noted in paragraph 43 above, under loose standards imposed by Section 622(2) of the Labor Law, the hearings under those provisions "shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure."  The failure of Sections 594 and 597 (4) to require proof beyond a reasonable doubt for findings that "constitute a crime" (*Winship*, *id*, at 363) automatically renders any findings made under Sections 594 and 597 (4) constitutionally invalid.

58.     In sum, *Winship* established that when a person is "charged with an act which would constitute a crime," that person is entitled to have the validity of that charge determined by proof beyond a reasonable doubt.  In the instant case, Plaintiff was "charged with an act which would constitute a crime," and yet, because Sections 594 and 597 (4) do <u>not</u> require that the charge be supported by proof beyond a reasonable doubt, they are constitutionally infirm on their face.

59.     In the instant case, the ALJ applied and used a standard of mere "credible evidence" - the lowest possible standard of proof acceptable in America: far lower than proof by a preponderance of the evidence - lower still than proof by a clear and convincing burden - and lower by far than proof beyond a reasonable doubt.  As such, the standard of proof that was used

and applied under Sections 594 and 597 (4) violated Plaintiff's rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

60.     In sum, because the finding and determination by the NYSDOL that Plaintiff "willfully made false statements to obtain benefits" is tantamount to a finding of guilt under various criminal laws of the State of New York and the United States of America and because that finding plainly had consequences to Plaintiff that are criminal in nature, Plaintiff had a constitutional right to have that finding determined on the basis of proof beyond a reasonable doubt.  Because Sections 594 and 597 (4) do not require the State to prove - by proof beyond a reasonable doubt - that a person "willfully made false statements to obtain benefits," those statutes are constitutionally defective and void on their face.

61.     Plaintiff also respectfully submits that Sections 594 and 597 (4) are constitutionally defective as applied to her because they enabled the NYSDOL render its finding that Plaintiff "willfully made false statements to obtain benefits" on the basis of a record comparable to the one in *Thompson v. Louisville, 362 U.S. 199 (1960)*, which the Supreme Court concluded was "so totally devoid of evidentiary support as to render [her] conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment."

62.     Finally, unless and until the criminal finding that Plaintiff "willfully made false statements to obtain benefits" is permanently expunged from the records, Plaintiff faces an impossible and untenable quandary.  In any future job application, or any time she runs for public office, when asked if she has ever been adjudged guilty of crime, Plaintiff must answer

either "Yes" or "No" - and either answer places her at jeopardy.  If she answers "Yes" she would automatically become ineligible for most public offices and for numerous employment opportunities which, by statute, are denied to persons who have been convicted of a crime - even though Plaintiff was never accorded the rights and protections guaranteed to persons accused of a crime under the Constitutions of the United States and the State of New York.  On the other hand, if she answers "No" she would be ignoring the public finding of the NYSDOL that she has been found guilty of willfully making false statements to obtain benefits and the immutable and necessary collateral consequences of that finding, such as the plain mandate of Section 632 of the New York State Law which clearly and unequivocally states: "Any person <u>shall be guilty of a misdemeanor</u> who willfully makes a false statement or representation . . . with the effect of obtaining, either for himself or for any other person, any benefit or payment under the provision of this article or of any similar law of another state or the United States . . .".  Plaintiff respectfully submits that no citizen of the United States should face such an untenable and impossible quandary simply to justify a finding that is based on the fiscal needs of the NYSDOL and supported by sloppily written statutes that are unconstitutional on their face and as applied.

<u>CAUSES OF ACTION</u>

<u>FIRST CLAIM FOR RELIEF AGAINST THE NYSDOL</u>:
<u>VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS</u>
<u>UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO</u>
<u>THE UNITED STATES CONSTITUTION</u>

63.     Plaintiff hereby repeats and re-alleges each and every allegation contained in Paragraphs 1 through 62 above as if set forth fully herein.

64.     Sections 594 and 597 (4) of the New York State Labor Law violate the Plaintiff's rights under the Due Process Clause of the Fifth and the Fourteenth Amendments, both facially and as applied to Plaintiff, in that they permit the finding of "an act which would constitute a crime" and the imposition of penalties that are criminal in nature without requiring that the essential element of those statutes - to wit, a finding that a person "willfully made false statements to obtain benefits" - be determined by proof beyond a reasonable doubt, thereby depriving Plaintiff and others similarly situated of the substantive use and enjoyment of their property.

65.     Sections 594 and 597 (3) of the New York State Labor Law violate the Plaintiff's rights under the Due Process Clause of the Fifth and the Fourteenth Amendments as applied to Plaintiff under the facts of this case because they have enabled the NYSDOL, acting under the color of law, to inflict on Plaintiff the type of "stigma plus" violation of the Plaintiff's due process rights that the Supreme Court of the United States has determined is both unlawful and actionable.

66.     Accordingly, Plaintiff requests relief as provided for in the Prayer for Relief below.

<u>SECOND CLAIM FOR RELIEF AGAINST ALL THE DEFENDANTS</u>
<u>DEPRIVATION OF PROPERTY RIGHTS AND INTANGIBLE BENEFITS</u>
<u>THROUGH THE IMPOSITION OF STIGMA PLUS VIOLATIONS</u>

67.     Plaintiff hereby repeats and re-alleges each and every allegation contained in Paragraphs 1 through 62 above as if set forth fully herein.

68.     Defendants have caused economic and other harm to Plaintiff by depriving her of the substantive use and enjoyment of her property rights and liberty interests by imposing and inflicting on her a "stigma plus" deprivation of her due process rights through the use of the unconstitutional procedures authorized by Sections 594 and 597 (4) of the New York State Labor Law and through the use of a record "totally devoid of evidentiary support" as to render its finding unconstitutional and improper under the Due Process Clause, all without serving any compelling, or even legitimate, governmental purpose.

69.     Accordingly, Plaintiff requests relief as provided for in the Prayer for Relief below.

<u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A.      Declare that Sections 594 and 597 (4) of the New York State Law violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution both facially and as applied to Plaintiff;

B.      Permanently enjoin the Defendants from enforcing or utilizing the provisions of Sections 594 and 597 (4) to make findings of a criminal nature in a manner that violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution;

C.      Grant Plaintiff a preliminary and a permanent injunction prohibiting Defendants from enforcing the demands set forth in the November 25 Demand Letter; enjoining the imposition of penalties, sanctions, or assessments against the Plaintiff or her property; and ordering the NYSDOL to refund to Plaintiff the amounts previously paid under protest to the NYSDOL pursuant to the November 25 Demand Letter;

D.      Order the NYSDOL to permanently expunge from its records any and all references to the finding that Plaintiff "willfully made false statements to obtain benefits," as well as to any similar or related findings arising out of or based upon the Underlying State-Court Proceedings.

E.      Award Plaintiff compensatory damages in an amount not less than One Million ($1,000,000) Dollars for the irreparable harm and injury to her good name and reputation and for past and future emotional pain and suffering arising out of the "stigma plus" violations that the NYSDOL has inflicted upon her without adequate due process and in violation of various rights and liberties guaranteed to her by the United States Constitution.

F.      Award Plaintiff such punitive damages as the jury may impose.

G.      Award Plaintiff costs and fees pursuant to 42 U.S.C. § 1988; and

H.      Grant Plaintiff such other and further relief as this Court deems just and proper.

Dated:   New York, NY
         July 14, 2006


                        LAW OFFICES OF SANJAY CHAUBEY


                        By: _/s/ Sanjay Chaubey
                            SANJAY CHAUBEY, ESQ

                        Attorney for Plaintiff
                          Diana D. Schmidt

                        The Empire State building
                        350 Fifth Avenue, Suite 5013
                        NEW YORK, New York 10118
                        Phone: (212) 563-3223
                        Fax: (212) 563 - 4534